1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11   TITAN GLOBAL LLC, a Nevada limited          )   Case No.: 12-CV-2104-LHK
     liability company; MATHEW RASMUSSEN         )
12   and LISA RASMUSSEN, husband and wife,       )   ORDER GRANTING-IN-PART AND
     residents of California,                    )   DENYING-IN-PART DEFENDANT
13                                               )   ORGANO GOLD'S MOTION TO
                              Plaintiffs,        )   DISMISS
14            v.                                 )
                                                 )
15   ORGANO GOLD INT'L, INC., a Washington       )
     corporation; HOLTON BUGGS JR. and JANE      )
16   DOE BUGGS, Texas residents; ROMACIO         )
     FULCHER, a single man and a California      )
17   resident; RRAMON FULCHER SR. and TYRA       )
     FULCHER, husband and wife, California       )
18   residents; KYLE A. SOLON, a single man and a )
     California resident; JOHN DOES AND JANE     )
19   DOES 1-25; JOHN DOES AND JANE DOES          )
     26-50; and XYZ CORPORATIONS AND LLCS        )
20   1-25,                                        )
                                                 )
21                            Defendants.        )
                                                 )
22   _____)

23            On April 26, 2012, Plaintiffs Titan Global LLC ("Titan Global"), Mathew Rasmussen, and

24   Lisa Rasmussen (collectively, "Plaintiffs") filed this action against Defendants Organo Gold

25   International, Inc. ("Organo Gold"), Holton Buggs, Jr., Jane Doe Buggs, Romacio Fulcher, Rramon

26   Fulcher, Sr., Tyra Fulcher, and Kyle A. Solon (collectively, "Defendants").  On June 21, 2012,

27   Defendant Organo Gold filed a motion to dismiss eight of Plaintiffs' nine claims for failure to state

28

                                                1

United States District Court
For the Northern District of California

1  a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court GRANTS Organo Gold's

2  motion to dismiss as to Plaintiffs' claims for violations of the Racketeer Influenced and Corrupt

3  Organizations Act (RICO) and defamation (claims 1, 2, and 8); and DENIES Organo Gold's

4  motion to dismiss as to Plaintiffs' business tort claims (claims 3, 4, 5, 6, and 7).  The Court also

5  dismisses Plaintiffs' ninth claim for breach of an oral car rental agreement *sua sponte*, for lack of

6  subject matter jurisdiction.

7  **I.      BACKGROUND**

8          Plaintiffs and Defendants are participants in multilevel marketing enterprises selling goods

9  and services.  In these enterprises, independent salespeople or businesses (referred to as

10  independent representatives, or "IRs") receive commissions not only for their own sales but also

11  for sales made by primary IRs they have recruited, by secondary IRs recruited by those primary

12  IRs, and so forth down the chain.  The Rasmussens and their LLC, Titan Global, together operate

13  as an IR within a multilevel marketing enterprise run by third party ACN to sell

14  telecommunications services like cable and internet.  Plaintiffs accumulated a large network of

15  downstream IRs.  Plaintiffs allege that Defendants attempted to recruit Plaintiffs' network of

16  downstream IRs away from Titan Global to rival company Organo Gold.  The downstream IRs

17  were signatories to the IR Agreement with ACN, which included provisions addressing

18  compensation and the confidentiality of business information.  In the process of recruiting the

19  downstream IRs, Defendants allegedly violated RICO (claims 1 and 2), committed a variety of

20  business torts (claims 3, 4, 5, 6, and 7), and defamed Plaintiffs (claim 8).  Plaintiffs also allege that

21  one Defendant, Romacio Fulcher, violated an oral car rental agreement (claim 9).

22  **II.     LEGAL STANDARD**

23          **A.      Federal Rule of Civil Procedure 8**

24          Rule 8 states that a civil complaint "must contain . . . a short and plain statement of the

25  claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court

26  has interpreted the "short and plain statement" requirement to mean that the complaint must

27  provide "the defendant [with] fair notice of what the . . . claim is and the grounds upon which it

28

2

Case No.: 12-CV-2104-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT ORGANO GOLD'S MOTION TO DISMISSS

**United States District Court**
For the Northern District of California

rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

### B.    12(b)(6) Motion to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient to state a claim, a court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In addition, pro se pleadings are liberally construed. See *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 595-96 (1972); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). However, a court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### C.    Leave to Amend

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (repeated failure to cure deficiencies by previous amendment sufficient to deny leave to amend).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

III.     **ANALYSIS**

     **A.     RICO claims**

     Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "To state a claim under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010) (citing *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir.2007) (en banc)). A " 'pattern' ... requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). "'[R]acketeering activity' is any act indictable under several provisions of Title 18 of the United States Code, and includes the predicate acts of mail fraud, wire fraud and obstruction of justice." *Sanford*, 625 F.3d at 557 (citing Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir.2004)). In other words, to establish the "racketeering activity" element of a RICO violation, a plaintiff must show that the defendant has committed one of several enumerated predicate violations. Further, RICO provides a private right of action where a plaintiff is "injured in his business or property by reason of a violation of § 1962." 18 U.S.C. § 1964(c). *Id.*

     Plaintiffs allege that the predicate acts of racketeering activity committed by Defendants were acts of wire fraud under 18 U.S.C. § 1343. Compl. ¶ 85. Wire or mail fraud consists of the following elements: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud. *Sanford*, 625 F.3d at 557 (citing *Schreiber Distribution Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir.1986)). Specifically, Plaintiffs allege that the wire fraud involved misrepresenting the income that Plaintiffs' downstream IRs could earn with Organo Gold. Compl. ¶ 86. Plaintiffs allege that as a result of Defendants' misrepresentations, Plaintiffs' downstream network of IRs was "ravag[ed]" resulting in losses of "not less than $25,000.00 per month." *Id.* Plaintiffs allege that as a result of Defendants' wire fraud, the profits generated by

4

Titan Global's downstream IRs were reduced because: (1) some Titan Global downstream IRs left Titan Global for Organo Gold; and (2) other Titan Global downstream IRs were demoralized by the Defendants' wire fraud, and consequently left Titan Global or were less productive.

Defendants argue that Plaintiffs lack standing to bring their RICO claims. Civil RICO plaintiffs must establish both that they have Article III standing and that they meet RICO's requirements for a private right of action. If a plaintiff lacks Constitutional standing, Congress may not confer standing on that plaintiff by statute; thus, meeting RICO's requirements, without establishing Article III standing, is insufficient. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 576-77 (1992).

Organo Gold argues that Plaintiffs' alleged injuries do not confer standing for the Plaintiff's RICO claims for three reasons: (1) Plaintiffs have not alleged an actual injury sufficient for Article III standing; (2) Plaintiffs have alleged only an emotional injury not compensable under § 1964(c); and (3) Defendants' alleged predicate acts of wire fraud are not the proximate cause of Plaintiffs' alleged injuries as required for standing under § 1964(c).

### 1.  Plaintiffs have alleged an actual injury sufficient for Article III standing.

Article III requires plaintiffs to establish three things to have standing: injury, causation, and redressability. *Lujan*, 504 U.S. at 560. Defendants have not argued that Plaintiffs have failed to meet either of the latter two requirements; rather, Defendants have argued that Plaintiffs have not alleged sufficient injury.

Plaintiffs' alleged injury is that Defendants' RICO wire fraud reduced Plaintiffs' commissions by causing downstream IRs to leave Titan Global or become less productive. Organo Gold argues that Plaintiffs' alleged RICO injuries are illusory because, under the relevant contracts, Plaintiffs have no vested interest in commissions generated by downstream IR commissions for two independent reasons. First, Plaintiffs are not parties to the contract that allegedly creates the interest: the IR Agreement between the IRs and ACN. Second, the IR Agreement disclaims any guaranteed earnings through direct or downstream sales. Accordingly, Organo Gold reasons that Plaintiffs' alleged loss of commissions cannot be an actual harm

5

1    sufficient for Article III standing.  In fact, for the reasons explained below, Plaintiffs are third party

2    beneficiaries of the IR Agreement, and the IR Agreement does entitle Plaintiffs to commissions

3    based upon the sales of downstream IRs.

4           First, as regards the beneficiary issue, California Civil Code § 1559 permits a third party to

5    enforce "[a] contract, made expressly for [his] benefit…."  To pursue a claim under § 1559, the

6    third party must have been an intended, as opposed to an incidental, beneficiary of the contract.

7    *Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist.*, 801 F. Supp. 2d 1023, 1032 (S.D. Cal.

8    2011).  A third party is an intended beneficiary if "the terms of the contract necessarily require the

9    promisor to confer a benefit on [the] third person."  *Id.*  It is not necessary that "[the] person… be

10   named or identified individually…."  *Id.*  It is enough that the third person be "a member of a class

11   of persons for whose benefit it was made."  *Id.*  In determining intent of the parties, the Court may

12   look beyond the written agreement and consider "the circumstances under which it was entered."

13   *Id.*  While, intent is ordinarily "a question of fact… where the issue can be answered by

14   interpreting the contract as a whole and doing so in light of the uncontradicted evidence of the

15   circumstances and negotiations of the parties in making the contract, the issue becomes one of law"

16   and may be resolved on summary judgment.  *Id.*

17          Plaintiffs are "member[s] of a class of persons for whose benefit [the IR Agreement] was

18   made": upstream IRs in the ACN network.  *Id.*  The IR Agreement incorporates by reference the

19   ACN Compensation Plan and the ACN Policies and Procedures, which set forth the relationships

20   between the network of IRs and ACN.  The compensation plan sets forth six levels of IRs.  At each

21   level, part of an IR's pay is based upon the sales of the downstream IRs he or she has recruited to

22   the ACN network.  The compensation plan explains that the top IR level is "senior vice president"

23   ("SVP").  Compensation Plan at 1.  An individual may also form an LLC that operates within the

24   IR network.  Policies and Procedures at 4.  The complaint alleges that Mathew Rasmussen is an

25   SVP, and Titan Global is an LLC established by Mathew Rasmussen within the ACN network.

26   Thus, the IR Agreement explicitly discusses payments to third parties like Plaintiffs.  This fact

27

28
                                                        6

1    alone strongly suggests that Plaintiffs are third party beneficiaries of the ACN IR Agreement.  *See*

2    *Hammes Co. Healthcare,* 801 F. Supp. 2d at 1032.

3        Furthermore, the IR Agreement makes the intent to benefit upstream IRs like Plaintiffs

4    clear by requiring the IR signatory to list his or her "sponsor," including that sponsor's

5    "representative I.D."  IR Agreement at 1.  ACN's Policies and Procedures explicitly protect

6    sponsors' interests in the IRs they recruit, stating, "ACN believes in and maintains the maximum

7    protection of the Independent Representative's relationship with his or her sponsor.  Therefore,

8    changing sponsors is strictly prohibited."  Policies and Procedures at 5.  Thus, the IR Agreement

9    protects the interests of upstream IRs in the downstream IR signatory by ensuring that the

10   downstream IR cannot be recruited away by other individuals in the IR network.

11       Organo Gold argues that the IR Agreement explicitly disclaims any interest of upstream IRs

12   in the downstream IRs they recruit, meaning that upstream IRs cannot be intended beneficiares of

13   the agreements.  In support of this position, Organo Gold cites provisions in the IR Agreement and

14   the Policies and Procedures stating that ACN is the sole owner of customer and IR information.

15   *See* IR Agreement at 2; Policies and Procedures at 7.  However, the provisions giving ACN sole

16   ownership of IR contact information protect not only the interests of ACN, but also the interests of

17   upper and middle level IRs such as Plaintiffs by ensuring that when individual IRs choose to leave

18   ACN, the departing IRs cannot also remove their downstream IRs and customers from the IR

19   network.  This benefit to upstream IRs is not merely incidental.  Instead, protecting the interests of

20   upstream IRs in their downstream IRs is integral to the alleged ACN business model which

21   requires that upstream IRs invest resources to build downstream IR networks.  Thus, even the ACN

22   IR Agreement provisions that grant ACN ownership of customer and IR contact information are

23   intended to benefit not only ACN, but also the upstream IRs.

24       In sum, the ACN IR Agreement intentionally benefits upstream IRs such as Plaintiffs, by:

25   (1) providing for commission payments to upstream IRs based upon sales of downstream IRs; (2)

26   tracking which upstream IR (i.e. sponsor) recruited the downstream IR signing the ACN IR

27   Agreement; (3) preventing the downstream IR signatory from changing which upstream IR sponsor

28

7

Case No.: 12-CV-2104-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT ORGANO GOLD'S MOTION TO DISMISSS

1    is credited with the downstream IR's customer sales and IR recruitment; and (4) preventing the

2    downstream IR signatory from taking customer and IR information if the downstream IR signatory

3    chooses to leave ACN.  Thus, Plaintiffs are "member[s] of [the] class of persons for whose benefit

4    [the ACN IR Agreement] was made."  *See Hammes Co. Healthcare,* 801 F. Supp. 2d at 1032.

5    Accordingly, the Court finds that Plaintiffs have adequately pled standing to enforce the ACN IR

6    Agreement as third party beneficiaries pursuant to California Civil Code § 1559.

7         Second, as regards entitlement to commissions, Organo Gold argues that even if Plaintiffs

8    are third party beneficiaries of the IR Agreement, the IR Agreement explicitly disclaims any

9    earnings guarantees.  Thus, Organo Gold reasons that any injury to Plaintiffs is purely speculative.

10   It is true that the IR Agreement warns IRs that no direct or downstream sales are guaranteed.  *See*

11   IR Agreement at 1.

12        However, the IR Agreement explicitly entitles upstream IRs such as Plaintiffs to

13   compensation based on whatever sales their downstream IRs *do* make.  *See* Compensation Plan;

14   Policies and Procedures at 6.  Plaintiffs allege losses based on the departure or demoralization of

15   IRs who have a history of sales.  Plaintiffs may introduce evidence of this pattern to a jury in an

16   attempt prove the amount of damages due to lost sales and commissions.  Though a jury might

17   ultimately find that the alleged losses are unproven, Plaintiffs have adequately alleged, for

18   purposes of a motion to dismiss, that Plaintiffs have suffered an actual compensable harm caused

19   by Defendants' recruitment activities: lost commissions to which Plaintiffs were entitled as third-

20   party beneficiaries of the IR Agreement.  *See Hammes Co. Healthcare,* 801 F. Supp. 2d at 1032.

21   This harm is sufficient to confer Article III standing.  *See Lujan,* 504 U.S. at 559-60.  Accordingly,

22   the Court will now consider whether Plaintiffs can meet RICO's requirements for a private right of

23   action.

24              **2.        Plaintiffs' alleged injuries are commercial, not emotional.**

25        RICO only grants standing to bring a private civil action for fraud to "[a]ny person injured

26   in his business or property by reason of a violation of" RICO's substantive provisions.  18 U.S.C. §

27   1964(c).  Personal physical or emotional injuries are not actionable under RICO.  *Berg v. First*

28

Case No.: 12-CV-2104-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT ORGANO GOLD'S MOTION TO DISMISSS

United States District Court
For the Northern District of California

1   *State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990).  Organo Gold argues that any harm caused by

2   "doubts . . . placed in the minds of . . . IRs" is personal emotional harm, not commercial harm, and

3   is thus not actionable.  However, Plaintiffs do allege commercial losses: lost sales commissions.

4   Plaintiffs allege that Defendants engaged in a deliberate strategy to recruit Titan Global's network

5   of downstream IRs, which resulted in a loss of commissions to Plaintiffs.  Though the recruitment

6   strategy allegedly included praising Organo Gold and denigrating Titan Global to the point of

7   slander, the fact that Defendants' alleged recruitment strategy had an emotional impact on Titan

8   Global's downstream IRs does not transform the alleged commercial injury of lost commissions

9   into a non-actionable emotional injury.  Accordingly, Plaintiffs have alleged an injury that is

10  cognizable in a private RICO action.

### 3. Plaintiffs have not adequately pled acts of interstate wire fraud that are the proximate cause of Plaintiffs' injuries.

12       In addition to commercial injury, standing to bring a private RICO action requires that the

13  alleged racketeering activity is the proximate cause of the alleged harm.  *See Anza v. Ideal Steel*

14  *Supply Corp.*, 547 U.S. 451, 457 (2006) (citing *Holmes v. Securities Investor Protection*

15  *Corporation*, 503 U. S. 258, 268 (1992)).  Organo Gold argues that the alleged wire fraud Plaintiffs

16  have alleged as the predicate violation for rackeering activity was not the proximate cause of

17  Plaintiffs' injuries, and that this lack of causation defeats standing.

18       The Court will first review the acts of interstate wire fraud alleged in the complaint to

19  determine whether Plaintiffs have sufficiently alleged a predicate violation to establish the

20  "racketeering activity" and "pattern" elements of RICO.  Second, the Court will consider whether

21  the alleged predicate violations are the proximate cause of Plaintiffs' injuries, as required for

22  statutory RICO standing.

### a. Plaintiffs have not pled a pattern of interstate wire fraud with particularity.

25       Plaintiffs have not adequately pled a pattern of interstate wire fraud.  Federal Rule of Civil

26  Procedure 9(b) provides that "[i]n alleging fraud . . . , a party must state with particularity the

27  circumstances constituting fraud," while "[m]alice, intent, knowledge, and other conditions of a

28

9

person's mind may be averred generally." Consequently, "[t]he only aspects of wire [or mail] fraud that require particularized allegations are the factual circumstances of the fraud itself." *Odom*, 486 F.3d at 554.

Plaintiffs argue that they have adequately pled three instances of allegedly fraudulent interstate wire communications that proximately caused Plaintiffs' alleged injuries.[1] First, in "July 2010," Romacio Fulcher ("Romacio") placed a call from California to Australia. During this call, Romacio told his then-boss Mathew Rasmussen that he might want to leave ACN. *See* Compl. ¶ 32. As a preliminary matter, there is no apparent causal connection between this statement to Rasmussen and Defendants' recruitment of Titan Global IRs which allegedly harmed the Plaintiffs. Furthermore, this statement does not appear to be an act of wire fraud because the complaint does not allege that this statement is false. *See id.* In fact, the complaint strongly suggests that Romacio *was* seriously considering leaving ACN to rejoin his brother Rramon at Organo Gold. *See id.* ¶ 29-31. Thus, Plaintiffs have not adequately pled that this first instance constitutes wire fraud.

Second, also in July 2010, Holton Buggs, Jr., ("Buggs") allegedly met with ACN IRs in Houston, TX. *See id.* ¶ 36. During this meeting, Buggs showed the ACN IRs information on his iPad, including various commissions and bonuses he had received totaling $300,000. *Id.* The complaint alleges that Buggs misleadingly stated that the ACN IRs could easily earn similar amounts. *Id.* The commission information was allegedly pulled up from Buggs' Organo Gold digital "back office" using interstate wire communications. *See id.*; Op. at 18. Plaintiffs reason that pulling information from this digital "back office" must have involved interstate wire

---

[1] The complaint alleges that these acts of wire fraud include making misleading income representations to potential Organo Gold recruits. Compl. ¶ 86. The complaint alleges that these misrepresentations constitute fraud because they did not comply with FTC regulations that bar income representations during recruitment of IRs into multi-level marketing enterprises such as Organo Gold. *Id.* Plaintiffs have not cited any precedent suggesting that violation of FTC regulations constitutes fraud *per se*. Furthermore, violation of these FTC regulations is not one of the predicate RICO racketeering offenses listed in 18 U.S.C. § 1961(1). However, Defendants have not cited any precedent suggesting that these FTC regulations barring income representations preempt common law fraud or § 1343 wire fraud. In other words, the same acts could violate FTC regulations *and* constitute wire fraud, without the causal relationship Plaintiffs claim. Accordingly, the Court considers whether Plaintiffs have adequately alleged acts of interstate wire fraud, including but not limited to making misleading income representations to potential Organo Gold recruits.

Case No.: 12-CV-2104-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT ORGANO GOLD'S MOTION TO DISMISSS

United States District Court
For the Northern District of California

1  communications because Organo Gold is headquarted in Canada and has an office in Washington.

2  *See* Op. at 18.  Drawing this reasonable inference in favor of Plaintiffs, Plaintiffs have adequately

3  alleged that Buggs used interstate wire communications to further his scheme of making fraudulent

4  income representations to the Titan Global IRs at the July 2010 Houston meeting.  These

5  allegations identify the exact time and place and the people involved in the alleged wire fraud; they

6  are thus sufficient under Rule 9(b).

7        The third alleged communication was a telephone call from Kyle Solon ("Solon") and

8  Romacio to Josh Koch ("Koch").  During this telephone call, Solon and Romacio allegedly

9  misrepresented how much Koch could earn at ACN.  *See* Compl. ¶ 54.  The complaint does not

10  allege when this call occurred, and therefore fails to meet the Rule 9(b) pleading standard.

11  Furthermore, the complaint does not allege the location of Solon, Romacio, or Koch during the

12  telephone call, as would be necessary to establish that the communication was interstate, and

13  therefore an instance of § 1343 wire fraud.  The complaint does allege that during the call Solon

14  "claimed . . . that [Solon had been] Mathew Rasmussen's protégé in Australia."  *Id.* ¶ 54.

15  However, the complaint identifies both Romacio and Solon as California residents.  *See id.* at 1

16  (naming Defendants).  The complaint also alleges that Solon and Koch had previously become

17  friends through ACN, suggesting that Koch might also be a California resident.  *Id.* ¶ 54.

18  Accordingly, Plaintiffs have not adequately pled that this third communication used interstate

19  wires.

20        In sum, only one of the three alleged instances of wire fraud is sufficiently pled under Rule

21  9.  A single adequately alleged act of interstate wire fraud in July 2010 does not constitute a

22  "pattern" of racketeering activity as required under RICO.  *See* 18 U.S.C. § 1961(5) ("[a] 'pattern'

23  ... requires at least two acts of racketeering activity").  Accordingly, the Court GRANTS Organo

24  Gold's motion to dismiss Plaintiffs' RICO claims on the independent ground of failure to plead the

25  predicate acts of wire fraud necessary to establish a pattern with the required particularity.

26          **b.**      **The alleged acts of wire fraud are not the proximate cause of**

                      **Plaintiffs' alleged injuries.**

27

28

1    Even if Plaintiffs had adequately pled the predicate acts of alleged wire fraud, Plaintiffs

2    have not adequately pled proximate causation.  As noted above, a plaintiff does not have standing

3    to bring a private RICO action unless he alleges that the racketeering activity proximately caused

4    the harm.  *See Anza,* 547 U.S. at 457.  "When a court evaluates a RICO claim for proximate

5    causation, the central question it must ask is whether the alleged violation led directly to the

6    plaintiff's injuries."  *Id.* at 461.  "In the Ninth Circuit, courts focus on three non-exhaustive factors

7    in considering proximate causation—i.e., whether the injury is 'too remote' to allow recovery: (1)

8    whether there are more direct victims of the alleged wrongful conduct who can be counted on to

9    vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the

10   amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the

11   courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple

12   recoveries."  *Proven Methods Seminars, LLC v. Am. Grants & Affordable Housing Inst., LLC*,

13   2008 WL 269080 at *5 (E.D. Cal., January 29, 2008) (citing *Mendoza v. Zirkle Fruit Co.*, 301 F.3d

14   1163, 1169 (9th Cir. 2002)).  *See also Holmes*, 503 U.S. at 269-70 (applying these three factors in

15   finding no RICO standing due to lack of proximate cause); *Anza*, 547 U.S. at 457-460 (applying

16   these three factors in finding no RICO standing due to lack of proximate cause).

17           Regarding the first factor, Organo Gold argues that the Titan Global IRs who were the

18   direct targets of the alleged wire fraud are in a better position to pursue any RICO claims than

19   Titan Global itself.  However, the alleged harm to Plaintiffs, the departure of IRs, occurs

20   independently of any harm to the IRs themselves.  Indeed, an IR might earn the same or higher

21   income after leaving Titan Global, yet Titan Global would still suffer harm.  Accordingly,

22   Plaintiffs are "the most direct victims . . . who can be counted on to vindicate the law as private

23   attorneys general."  *Mendoza*, 301 F.3d at 1169.  This factor thus favors Plaintiffs.

24           Regarding the third factor, there is little risk of double recovery by Plaintiffs and their

25   downstream IRs.  The commissions earned by the IRs are necessarily separate from the

26   commissions earned by their upstream sponsors, i.e. Plaintiffs.  The various commissions paid to

27   each party are explained in the Compensation Plan attached to the IR Agreement.  Accordingly, if

28

12

United States District Court
For the Northern District of California

1   any Titan Global IR sought to recover income lost as a result of Defendants' alleged wire fraud,

2   there would be no need for a complex apportionment formula to avoid double recovery.  Thus, this

3   factor likewise favors Plaintiffs.

4          However, the second factor, whether it will be difficult to ascertain the amount of Plaintiffs'

5   damages attributable to Defendants' wrongful conduct, is dispositive in this case.  Even if Plaintiffs

6   adequately allege the three purported acts of interstate wire fraud, it will be difficult to ascertain the

7   amount of damages attributable to this wrongful conduct.  The Court will address each alleged

8   episode in turn to consider how easily damages might be ascertained.

9          As explained above, Plaintiffs describe multiple instances in which Defendants attempted to

10  recruit Titan Global's downstream IRs.  Only two of these instances[2] have any connection to an

11  alleged act of interstate wire fraud: (1) the July 2010 meeting in Houston; and (2) a single phone

12  call made by Solon and Romacio to Koch.

13         The July 2010 Houston meeting was a face to face meeting.  During this meeting, Buggs

14  allegedly used interstate wires in one instance: to display Buggs' commission and bonus income on

15  Buggs' iPad, which Buggs then "passed around."  Yet proximate causation is undermined by the

16  next sentence of the complaint which states, "[t]here were many income representations made by

17  Holton Buggs during the two days in Houston. . . "  Compl. ¶ 36.  Thus, Plaintiffs have no clear

18  way to establish that it was the iPad display, and not any of these other income representations, that

19  caused any given amount of Plaintiffs' harm.

20         Similarly, the alleged phone call by Solon and Romacio to Koch is a single event in the

21  context of a larger pattern of Romacio's attempted recruitment of Koch.  Indeed, the complaint

22  alleges that Romacio "continues to try to get [Koch] to meet with him."  *Id*. ¶ 54.  Thus, it is simply

23  not possible to determine whether this one specific phone call caused any particular portion of the

24  harm.  What is more, any alleged harm potentially caused by either of these incidents could also be

25

26  _____

27  [2] The third alleged interstate communication, the call from Romacio to Matthew Rasmussen, has
    no apparent connection to the recruitment, as explained above.  However, Plaintiffs allege many
    other instances of attempted recruitment that are unrelated to any interstate wire fraud.  *See, e.g.*,
28  Compl. ¶ 49-50.

13

Case No.: 12-CV-2104-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT ORGANO GOLD'S MOTION TO
DISMISSS

1    due to the many other alleged acts of recruitment.  It is simply not possible to ascertain the amount

2    of damages that might be attributable to these two isolated incidents.

3            The instant case is analogous to *Anza*, in which the defendant's predicate RICO violation of

4    tax fraud allowed the defendant to offer lower prices, but there was no proximate causation because

5    the defendant's lower prices were only one possible cause of the plaintiff's lost profits.  *Anza*, 547

6    U.S. at 459.  As the *Anza* Court, explained, "[b]usinesses lose and gain customers for many

7    reasons, and it would require a complex assessment to establish what portion of [the plaintiff's] lost

8    sales were the product of [the defendant's] decreased prices."  *Id.*  Similarly, salespeople may quit

9    their jobs or become less productive for any number of reasons, and it would require a complex

10   assessment to determine the fraction of Plaintiffs' damages that are attributable to predicate acts of

11   wire fraud and the resulting demoralization of Titan Global IRs.  Accordingly, Plaintiffs have not

12   adequately pled standing to bring their RICO claims because the predicate acts of alleged wire

13   fraud are not the proximate cause of harm to Plaintiffs.

14           Therefore, the Court GRANTS Organo Gold's motion to dismiss Plaintiffs' RICO claims

15   not only because Plaintiffs have failed to allege with particularity a pattern of interstate wire fraud,

16   but also on the independent ground that the alleged acts of interstate wire fraud are not the

17   proximate cause of Plaintiffs' injuries.  However, Plaintiffs may be able to: (1) allege with

18   particularity additional acts of interstate wire fraud that together would constitute a RICO

19   violation; and (2) allege facts suggesting a direct connection between an injury to Plaintiffs and the

20   predicate acts of alleged interstate wire fraud.  Accordingly, the Court dismisses Plaintiffs' RICO

21   claims with leave to amend.

22           **B.     Business Torts**

23           Plaintiffs bring suit for five business tort claims:  (1) unfair business practices under Cal.

24   Bus. Prof. Code § 17200; (2) tortious interference with contract; (3) tortious interference with

25   prospective economic advantage; (4) misappropriation of trade secrets; and (5) civil conspiracy.

26   Each of these claims arises from the breach of or interference with the contracts between ACN and

27   independent representatives sponsored by Titan Global.

28

Case No.: 12-CV-2104-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT ORGANO GOLD'S MOTION TO
DISMISSS

United States District Court
For the Northern District of California

**1.   Plaintiffs have standing to bring their business tort claims.**

Organo Gold argues that Plaintiffs lack Article III standing to bring their five business tort claims because Plaintiffs cannot show that they have been harmed by breach of or interference with the contracts between ACN and the IRs.  First, Organo Gold argues that the relevant contracts are the IR Agreements between each IR and CAN.  Organo Gold reasons that Plaintiffs have no protectable relationship with their downstream IRs because Plaintiffs are not parties to these IR Agreements.  Second, Organo Gold argues that Plaintiffs are not guaranteed any earnings based upon their association with IRs.

These are the same arguments that Organo Gold raised to argue that Plaintiffs lacked Article III standing to bring their RICO claims.  As the Court previously explained, Plaintiffs are third party beneficiaries of the IR Agreements between each IR and ACN, and Plaintiffs are entitled to commissions based upon whatever sales are made by their downstream IRs.  Accordingly, Plaintiffs have Article III standing to seek recovery of their alleged business tort losses as third-party beneficiaries of the ACN IR Agreement.  Defendants' motion to dismiss the business tort claims for lack of Article III standing is DENIED.

**2.   No preemption by the California Uniform Trade Secret Act (CUTSA).**

Organo Gold argues that Plaintiffs' trade secret claim preempts Plaintiffs' other business tort claims.  The CUTSA § 3426.7 "expressly allows contractual and criminal remedies, whether or not based on trade secret misappropriation . . . [but] implicitly preempts alternative civil remedies based on trade secret misappropriation."  *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, 171 Cal.App.4th 939, 954 (Cal. Ct. App. 2009).  "[T]he determination of whether a claim is based on trade secret misappropriation is largely factual."  *Id.* (citing *Digital Envoy, Inc. v. Google, Inc.*, 370 F.Supp.2d 1025, 1035 (N.D.Cal., 2005) (applying § 3426.7)).  A claim is preempted if it is "based on the same nucleus of facts as the misappropriation of trade secrets claim for relief."  *K.C. Multimedia*, 171 Cal.App.4th at 959 (citing *Digital Envoy*, 370 F.Supp.2d at 1035).  Thus, a claim is not preempted under § 3426.7 if it is based upon alleged facts beyond trade secret misappropriation. *See, e.g., E-Smart Technologies, Inc. v. Drizin*, No. C 06–05528-MHP,

Case No.: 12-CV-2104-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT ORGANO GOLD'S MOTION TO DISMISSS

2009 WL 35228 at *6 (N.D. Cal., Jan. 6, 2009) (distinguishing *Digital Envoy*, 370 F.Supp.2d 1025).  *See also AirDefense, Inc. v. AirTight Networks, Inc.*, No. C 05-04615JF, 2006 WL 2092053 at *3 (N.D. Cal. July 26, 2006) (denying motion to dismiss for CUTSA § 3426.7 preemption as to claims alleging additional facts beyond those supporting the trade secret misappropriation claim, and granting motion to dismiss as to claims that were not based upon additional alleged facts).

Plaintiffs allege four business tort claims other than trade secret misappropriation.  Each of these claims is based not only upon allegations that Defendants misappropriated trade secret IR and customer lists; but also upon allegations that Defendants made a variety of misleading, fraudulent, or slanderous statements to IRs.  *See* Compl. ¶¶ 92-2; 92-3 (unfair competition claim based upon defamation and misleading income represensations); *id.* ¶¶ 98-99 (interference with contractual relations claim based up defamation and misleading income representations); *id.* ¶ 106 (interference with prospective economic advantage claim based upon defamation and misleading income representations); *id.* ¶¶ 120-a; 120-b; 120-e; 121-a (civil conspiracy claim based upon defamation and misleading income representations).  Because all four of these business tort claims are based on facts that go beyond trade secret misappropriation, none of them is preempted by Plaintiffs' claim for misappropriation of trade secrets.  Accordingly, the Court DENIES Organo Gold's motion to dismiss Plaintiffs' business tort claims on preemption grounds.

## C.   Defamation

Defendants argue that Plaintiffs have failed to state a claim for defamation.  Under California law, the words of a defamatory statement "must be specifically identified, if not pleaded verbatim, in the complaint." *Gilbert v. Sykes*, 147 Cal. App. 4th 13 (Cal. Ct. App. 2007).  Pleading the "substance of the defamatory statement" is also adequate to state a claim. *Okun v. Superior Ct.*, 29 Cal.3d 442, 458 (1981).  But "general allegations of the defamatory statements" which do not identify the substance of what was said are insufficient. *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1314 (N.D.Cal. 1997).  In *Silicon Knights*, the court found too general the allegation of "false and defamatory statements to several of Silicon Knights' customers, prospective customers, industry associates and the public regarding: (a) the quality and reliability

Case No.: 12-CV-2104-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT ORGANO GOLD'S MOTION TO DISMISSS

1   of Silicon Knights' products, (b) the competence and ability of Silicon Knights' employees, and (c)

2   Silicon Knights' cooperation and ability to work with customers, suppliers, or other persons in the

3   software industry." *Id.* at 1314.  Similarly, in *Jacobson v. Schwarzenegger*, the court found

4   insufficient the allegation of "spuriously leveling a false and defamatory charge against [the

5   plaintiff] of inappropriate comportment towards a female parole agent [defendant Murria],

6   following a parole revocation hearing on May 21, 2003."  357 F. Supp. 2d 1198, 1216 (C.D. Cal.

7   2004).  Both the *Silicon Knights* and *Jacobson* allegations included some details as to the substance

8   of the alleged defamatory statements: attacks on the "quality . . . reliability . . . competence . . . and

9   cooperation" of Silicon Knights in specified professional contexts, and allegations of

10  "inappropriate comportment towards a female parole agent" in *Jacobson*.  *See Silicon Knights*, 983

11  F. Supp. at 1314; *Jacobson*, 357 F. Supp. 2d at 1216.  However, these details did not adequately

12  reveal the full substance of the allegedly defamatory statements.  *Silicon Knights*, 983 F. Supp. at

13  1314; *Jacobson*, 357 F. Supp. 2d at 1216.

14  Like the allegations in *Silicon Knights* and *Jacobson*, Plaintiffs' allegations are

15  insufficiently specific regarding the substance of the defamatory statements.  The complaint alleges

16  "defamatory statements about Mathew Rasmussen and ACN's leadership abilities."  Compl. ¶ 33.

17  This allegation is clearly insufficient under the cases discussed above.  Slightly more specific, but

18  still insufficient is the allegation that Defendants made multiple "defamatory statements" that

19  "Mathew Rasmussen is an incompetent and dishonest leader who will not reveal to his group the

20  elements necessary to be successful."  *Id*. ¶ 43.  Finally, the complaint alleges general "false and

21  defamatory statements of fact about the character and business acumen of Titan's owner, Mathew

22  Rasmussen labeling him as an incompetent and dishonest business leader."  *Id*. ¶ 63.  These general

23  allegations of multiple defamatory statements do not reveal specific statements that Plaintiffs allege

24  were defamatory, as required to survive a motion to dismiss.

25  Accordingly, the Court GRANTS Organo Gold's motion to dismiss Plaintiffs' claim for

26  defamation.  However, Plaintiffs may be able to cure the deficiencies by alleging the substance of

27

28

17

the defamatory statements with more specificity.  Accordingly, the Court GRANTS leave to

amend, and dismisses Plaintiffs' defamation claim without prejudice.

**D.    Plaintiffs' Ninth Claim for Breach of Oral Agreement**

Plaintiffs allege that Romacio Fulcher breached an oral agreement to rent and maintain a

745i BMW 2006 model automobile from Tital Global and Matt Rasmussen.  Compl. ¶¶ 126-129.

This is a state law claim; thus, this Court does not have federal question jurisdiction under 28

U.S.C. § 1331.  Further, the amount of damages sought is $5,735.80 plus interest and late charges,

well below the $75,000 amount in controversy requirement for diversity jurisdiction.  *See* 28

U.S.C. § 1332.  Thus, the Court must ask whether it has pendant jurisdiction under 28 U.S.C. §

1367.

The Court has pendant jurisdiction over a state law claim which arises out of the same "case

or controversy" as other claims over which the Court has jurisdiction.  28 U.S.C. § 1367(a).  A

state claim is part of the same case or controversy when it shares "a common nucleus of operative

fact" and the claims would normally be tried together.  *Bahrampour v. Lampert*, 356 F.3d 969, 978

(9th Cir. 2004).  There is no common nucleus of operative fact if "there is no evidentiary overlap

whatsoever between [the] claims."  *See U.S. ex rel. Hill v. Teledyne, Inc.*, 103 F.3d 143 (9th Cir.

1996).

Plaintiffs' ninth claim does not arise out of the same case or controversy as, or share a

common nucleus of operative fact with, Plaintiffs' other claims.  The alleged failure of Romacio to

abide by the alleged car rental agreement turns on whether a rental agreement existed, what the

specifics of that agreement were, and whether Romacio complied with the alleged agreement by

adequately maintaining and paying for the car.  None of these issues is relevant to Plaintiffs' RICO,

business tort, and defamation claims.  Thus, there is no "evidentiary overlap" between Plaintiffs'

ninth claim for breach of oral agreement and Plaintiffs' other claims.  Therefore, the Court finds

that it lacks pendant jurisdiction over Plaintiffs' ninth claim for breach of oral agreement..

Accordingly, the Court *sua sponte* DISMISSES Plaintiffs' ninth claim for lack of subject matter

jurisdiction.  The Court dismisses with prejudice because Plaintiffs cannot allege any additional

Case No.: 12-CV-2104-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT ORGANO GOLD'S MOTION TO
DISMISSS

**United States District Court**
For the Northern District of California

1   facts which would cure the fundamental deficiency in Plaintiffs' ninth claim: that Romacio's

2   breach of an oral car rental agreement is unconnected to Defendants' alleged attempts to poach

3   Titan Global's IR network.

**IV.      CONCLUSION**

5            For the aforementioned reasons, the Court GRANTS WITHOUT PREJUDICE Organo

6   Gold's motion to dismiss Plaintiffs' claims for RICO violations and defamation (claims 1, 2, and

7   8); DENIES Organo Gold's motion to dismiss Plaintiffs' claims for business torts (claims 3, 4, 5, 6,

8   and 7); and *sua sponte* DISMISSES WITH PREJUDICE Plaintiffs' claim for breach of oral

9   agreement (claim 9).

**IT IS SO ORDERED.**

Dated: December 2, 2012

_Lucy H. Koh_
_____
LUCY H. KOH
United States District Judge

United States District Court
For the Northern District of California

19
Case No.: 12-CV-2104-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT ORGANO GOLD'S MOTION TO
DISMISSS